IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CENTRAL TRANSPORT, LLC, et al.　:　　　CIVIL ACTION
　　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
ATLAS TOWING, INC., et al.　　　:　　　NO. 11-7602

MEMORANDUM

Dalzell, J.　　　　　　　　　　　　　　　August 1, 2012

        This suit arises from an accident between a van and a
tractor-trailer plaintiff GLS Leasco, Inc. ("GLS") owned and
leased to plaintiff Central Transport, LLC ("Central").  In the
aftermath of the accident -- which tragically claimed one life and
caused serious injuries to several people, see Kevin Amerman,
"Man, 54, guilty in fatal crash", The Morning Call (Allentown),
Oct. 7, 2011, at A8 -- police officers allegedly instructed
defendant Atlas Towing, Inc. ("Atlas") to tow and impound
plaintiffs' tractor-trailer, along with its cargo, for use as
evidence in the criminal prosecution of the van's driver.

        That prosecution has at last concluded and plaintiffs
seek to recover their tractor trailer and cargo from Atlas.
Plaintiffs allege that Atlas refuses to turn over the property
until they pay storage and towing fees.

        Plaintiffs assert six claims against defendants: (1)
conversion; (2) intentional interference with contractual
relations and interstate commerce; (3) replevin; (4) punitive

damages; (5) civil liability stemming from violations of the

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

U.S.C. §§ 1961, et seq.; and (6) injunctive relief under RICO.

Defendants Atlas and Robert N. Wotring ("Wotring") have

moved to dismiss all of plaintiffs' claims.  Upon examination of

defendants' motion to dismiss and plaintiffs' response in

opposition thereto, we conclude that only two of plaintiffs'

claims -- for conversion and replevin -- survive defendants'

motion to dismiss.  Because the amount in controversy exceeds

$75,000 and the parties are diverse, we retain jurisdiction over

this case pursuant to 28 U.S.C. § 1332 despite the dismissal of

plaintiffs' federal cause of action and will instruct defendants

promptly to answer the surviving allegations of the complaint.


I.   **Factual Background**

In considering a motion to dismiss for failure to state

a claim under Fed. R. Civ. P. 12(b)(6), we must "'accept all

factual allegations in the complaint as true and give the pleader

the benefit of all reasonable inferences that can be fairly drawn

therefrom.'"  Ordonez v. Yost, 289 Fed. Appx. 553, 554 (3d Cir.

2008) (quoting Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir.

1993)).  We may "'consider only allegations in the complaint,

2

exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim,'" Brown v. Daniels, 128 Fed. Appx. 910, 913 (3d Cir. 2005) (quoting Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004)), where a document forms the basis of a claim if it is "integral to or explicitly relied upon in the complaint."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis and internal quotation marks omitted).  As our Court of Appeals has explained, this means that we may "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  Because plaintiffs' complaint relies in part on certain documents, we will review both the allegations of the complaint and the features of those documents that are material to defendants' motion to dismiss.

According to plaintiffs, Central and GLS are Indiana corporations with their principal places of business in Warren, Michigan.  Atlas is a Pennsylvania corporation with its principal place of business in Whitehall, Pennsylvania.  Pls.' Compl. ¶¶ 1-3.  Plaintiffs allege that Wotring is an adult "domiciled in Lehigh County, Pennsylvania, who has acted at all times relevant

hereto both individually for his own profit and as president and/or owner of Defendant Atlas." Id. ¶ 4.

Plaintiffs aver that Central is engaged in the business of transporting "goods, cargo, wares, freight, and/or other merchandise" as a common motor carrier in interstate commerce, and that GLS owns and leases a tractor, dolly, and two trailers (collectively, the "vehicle") to Central. Id. ¶¶ 7-8. Defendants are engaged in the business of vehicle towing, accident cleanup, and accident recovery services, and allegedly own, maintain, and control a place of business where vehicles that have been involved in accidents -- including plaintiffs' vehicle, along with its cargo -- are stored. Id. ¶¶ 9-10. Plaintiffs state that on various dates before July 17, 2010, multiple customers entered into agreements with Central whereby Central was to transport and deliver certain cargo "as an interstate motor carrier in interstate commerce," id. ¶ 11. They note that pursuant to the applicable bills of lading "Central was to carry and deliver the goods with reasonable dispatch and within a reasonable time to its customers." Id. ¶ 12 (citing Ex. A to Pls.' Compl.). Plaintiffs claim that this cargo is worth more than $148,000. Id. ¶ 21.

On July 17, 2010, plaintiffs' vehicle was involved in an accident in Allentown, Pennsylvania, id. ¶ 13, with a van driven

4

by James Augustus York ("York").  Immediately after the accident the Pennsylvania State Police allegedly called defendants to the scene to provide towing and recovery services.  Id. ¶ 14.  Atlas took this call and, "at the direction of Pennsylvania State Police," removed plaintiffs' vehicle and its cargo to its own facility for the Commonwealth's use as evidence in York's criminal prosecution.  Id. ¶ 15.  According to plaintiffs, the Commonwealth, through the office of the District Attorney of Lehigh County, now "stands ready to release the vehicle and cargo to Plaintiffs," but defendants refuse to release the vehicle or cargo until plaintiffs have paid defendants' towing and storage bill, id. ¶¶ 17-18, which amounted to $77,085.00 on October 24, 2011, see Ex. B to Pls.' Compl., but which defendants were willing to reduce to $64,335.00 as of December 7, 2011.  See Ex. D to Pls.' Compl.

Plaintiffs further allege that defendants "now threaten to dispose of the vehicle without consent of the Plaintiffs," id. ¶ 19, citing a December 7, 2011 letter from defendants' attorney in which he explained that "[i]n the event your client does not agree [to settle defendants' bill], please be advised that within the next 15 days, my client will move to have the tractor, trailers and equipment classified by the Pennsylvania

state [sic] Police as abandoned and we will proceed to sale for collection of the towing and storage charges."  Ex. D to Pls.' Compl.

> Finally, plaintiffs aver that
>
> Defendants Atlas and Wotring, actively engaged in the towing business at all times relevant to this civil action, have known throughout this dispute that there is no statute or other law that imposes liability upon the Plaintiff,[1] or that grants Defendant any lien against the Plaintiff's property, for the Commonwealth's impoundment of its vehicle or cargo as evidence in a criminal case against a third party.

Pls.' Compl. ¶ 24.  Plaintiffs also plead that defendants "reasonably should have known" about the absence of liability described above because they are "actively engaged in the towing business" and in any event "through their counsel, were notified by Plaintiff" that such liability did not exist.  Id. ¶¶ 25-26.

## II.  **Analysis**

As the Supreme Court has explained, "only a complaint that states a plausible claim for relief survives a motion to dismiss" pursuant to Rule 12(b)(6), so that a reviewing court must

---

[1] Though there are two plaintiffs and two defendants in this action, plaintiffs typically use the singular when referring to themselves and the opposing parties.  We will nevertheless eschew repeated use of sic.

engage in a "context-specific" inquiry that "requires [it] to draw on its judicial experience and common sense" to resolve a motion to dismiss.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). Under this standard, a pleading may not simply offer "labels and conclusions," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949.  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, which is to say that there must be "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949.  Essentially, a plaintiff must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element" of the cause of action.  Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (internal quotation marks omitted).

We will begin our analysis by briefly explaining why Counts II, IV, V, and VI fail to state a claim, and why plaintiffs have failed to state a claim against defendant Wotring.  We will then discuss plaintiffs' claims for conversion and replevin.

A.   **Count II: "Intentional Interference**
     **With Contractual Relations and Interstate Commerce"**

Plaintiffs aver that "[d]efendant, acting without
privilege or license, has wrongfully interfered with Plaintiff's
existing contractual relationships with its customers by
improperly detaining the cargo/freight in question such that
Plaintiff has been unable to perform its agreement as contained in
the Bills of Lading." Pls.' Compl. ¶ 56. Defendants respond[2]
that "Pennsylvania law; in particular, the Restatement of Torts
(2nd), § 767, would require the defendant, in this case, to
interfere by contact with plaintiffs' customers in some manner so
as to deter said customers from dealing with plaintiffs." Defs.'
Br. in Supp. of Mot. Dismiss ("Defs.' Br.") at 15.

As the Supreme Court of Pennsylvania noted in Adler,
Barish, Daniels, Levin & Creskoff v. Epstein, 393 A.2d 1175, 1181-
82 (Pa. 1978), "[i]n Birl v. Philadelphia Electric Co., 402 Pa.

---

[2] Defendants also assert that "Plaintiffs' goods are no
longer interstate commerce and could not be interfered with,
under any stretch of the imagination," Defs.' Mot. Dismiss ¶ 9,
in an effort to counter plaintiffs' allegation that "[a]s a
result of the foregoing, and Defendant's ongoing policies,
interstate commerce has been damaged as a whole and will continue
to suffer until Defendant's actions are corrected." Pls.' Compl.
¶ 62. This effort is unnecessary. We are aware of no cause of
action for "interference with interstate commerce" and plaintiffs
have pointed to no caselaw identifying such a tort.

297, 167 A.2d 472 (1961), this Court adopted Section 766 of Restatement of Torts and its definition of the right of action for intentional interference with existing contractual relations," though the Court ultimately found it "appropriate to analyze this case in light of the approach fashioned by Restatement (Second)." Id. at 1183.  More recently, the Pennsylvania Superior Court has observed that "[a] cause of action for intentional interference with existing contractual relationships is outlined in Restatement (Second) of Torts § 766." Foster v. UPMC South Side Hosp., 2 A.3d 655, 665 (Pa. Super. 2010).

While the language of these two provisions differ slightly, each requires a plaintiff to show that a defendant caused a third party not to enter into or perform under a contract.  Compare Restatement of Torts § 766 ("Except as stated in Section 698, one who, without a privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with another, or (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby.") (emphasis added) with Restatement (Second) of Torts § 766 ("One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the

<u>third person not to perform the contract</u>, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.") (emphasis added).  <u>See</u> <u>also</u> <u>Maier v. Maretti</u>, 671 A.2d 701, 707 (Pa. Super. 1995) ("The tort of interference with contract provides that one who intentionally and improperly interferes with the performance of a contract between another and a third person <u>by causing the third person not to perform</u> the contract is subject to liability.") (emphasis added); <u>Judge Technical Services, Inc. v. Clancy</u>, 813 A.2d 879, 887 (Pa. Super. 2002) (same).  Since plaintiffs have not alleged that defendants induced or otherwise caused any third party not to perform under a contract with plaintiffs, they have failed to state a claim for intentional interference with contract[3] and we will dismiss Count II.

---

[3] We also note that, as a number of Pennsylvania courts have observed, "[t]o set forth a legally sufficient cause of action for intentional interference with contractual or prospective contractual relations," a plaintiff must plead "purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring." <u>Pelagatti v. Cohen</u>, 536 A.2d 1337, 1343 (Pa. Super. 1987).  <u>See</u> <u>also</u> <u>Strickland v. Univ. of Scranton</u>, 700 A.2d 979, 985 (Pa. Super. 1997) (same); <u>Ira G. Steffy & Son, Inc. v. Citizens Bank of Pa.</u>, 7 A.3d 278, 288 (Pa. Super. 2010) (same).  As plaintiffs have not alleged that defendants "specifically intended to harm [any] existing relation," but instead make clear that any such harm has been a
(continued...)

B.  <u>Count IV: Punitive Damages</u>

      Plaintiffs assert an independent claim for punitive damages.  They allege that "[d]efendant's conduct will continue to unlawfully interfere with interstate commerce until Defendant is deterred by the imposition of sufficient punitive damages and other relief."  Pls.' Compl. ¶ 76.  Defendants respond that "Pennsylvania law does not recognize punitive damages as a separate cause of action."  Defs.' Br. at 17.  Defendants are clearly correct on this point.  <u>See</u>, <u>e.g.</u>, <u>Hilbert v. Roth</u>, 149 A.2d 648, 652 (Pa. 1959) ("The right to punitive damages is a mere incident to a cause of action -- an element which the jury may consider in making its determination -- and not the subject of an action in itself."); <u>Murray v. Gencorp, Inc.</u>, 979 F. Supp. 1045, 1050 (E.D. Pa. 1997) (Joyner, J.) ("The parties are correct that under Pennsylvania law there is no separate cause of action for punitive damages.") (collecting cases).  We will accordingly dismiss Count IV of plaintiffs' complaint.[4]

------

[3] (...continued)
mere byproduct of defendants' efforts to secure payment from plaintiffs, plaintiffs have failed to state a claim for intentional interference with contract on this basis as well.

     [4] Judge Joyner granted the plaintiff in <u>Murray</u> leave to amend the complaint to include a request for punitive damages
(continued...)

C.    __Count V and VI: Civil RICO and Injunctive Relief__

Not content with pleading a mine-run business dispute,

plaintiffs decorate their complaint with two RICO counts, arising

from the same nucleus of facts.  We will thus scrutinize Counts V

and VI as one RICO claim.  In support of this RICO claim,

plaintiffs allege that

> Upon information and belief, Atlas and
> Wotring, individually and through their
> officers, investors, agents and employees,
> have committed the same and similar such
> unlawful and criminal acts by demanding
> unlawful fees and charges through means of
> fraud, coercion and extortion, resulting in
> interference with the lawful transport of
> goods and services in interstate commerce as
> an unlawful business enterprise on multiple
> occasions over the last ten years.

Pls.' Compl. ¶ 78.  Defendants respond, _inter_ _alia_, that (1) "not

only have plaintiffs speculated that there were misrepresentations

made by mail and electronic communications, they did not identify

the fraudulent circumstances; they did not identify the persons

who made and received the alleged misrepresentations; and they

failed to allege any facts or misrepresentations by defendants, as

required by the mail fraud statutes," Defs. Br. at 18-19; (2)

---

[4] (...continued)
under the appropriate claim.  979 F. Supp. at 1050.  We need not
take such action here because plaintiffs already include prayers
for punitive damages under each of their claims.

12

"[n]o allegations of force, violence or fear were pled, nor were they alleged anywhere in the entire complaint.  Therefore, plaintiffs have failed to establish the necessary elements for extortion," id. at 19; and (3) "plaintiffs' allegations in averment 78 does [sic] not establish a pattern of racketeering activities, since in the overall complaint, they only one alleged contact [sic] was with respect to the towing of plaintiffs' vehicles."  Id. at 18.

Plaintiffs appear to concede defendants' first point, offering no argument in response.  With respect to the second argument, plaintiffs reply that (1) "[d]efendants have even threatened to destroy or dispose of Plaintiffs' property, representing to Plaintiffs that they will declare it 'abandoned' although the Defendants know in fact that such representations to authorities would be false," and such conduct is "an ongoing extortion," Pls.' Resp. to Defs.' Mot. Dismiss ("Pls.' Resp.") at 10; and (2) "[d]efendants' assertion of a lien that does not exist in law, to demand payments that the Plaintiffs do not owe, is just such an illegal game.  It is punishable as theft and extortion." Id. at 14.  On defendants' third point, plaintiffs argue that "[j]ust two or more such events, in the space of ten years, will be sufficient to support the claim of an enterprise -- and

13

Plaintiffs are entitled to pursue the policies and actions of the Defendants over the last ten years to support these claims." Id.

Parsing the parties' arguments requires us first to set forth a number of statutory provisions. 18 U.S.C. § 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Section 1961(1) defines "racketeering activity" in part as "(A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year" or "(B) any act which is indictable under any of the following provisions of title 18, United States Code: . . . section 1341 (relating to mail fraud). . . ." Section 1961(5) explains that "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding

14

any period of imprisonment) after the commission of a prior act of

racketeering activity." And under § 1964(c),

> Any person injured in his business or property
> by reason of a violation of section 1962 of
> this chapter may sue therefor in any
> appropriate United States district court and
> shall recover threefold the damages he
> sustains and the cost of the suit, including a
> reasonable attorney's fee, except that no
> person may rely upon any conduct that would
> have been actionable as fraud in the purchase
> or sale of securities to establish a violation
> of section 1962. . . .

According to their complaint, plaintiffs predicate their

civil RICO claim on allegations of fraud and extortion. To state

a claim under RICO predicated on alleged mail fraud, a plaintiff

must make a showing of proximate cause, which in turn requires a

plaintiff to aver reliance upon a material misrepresentation by a

defendant. After all, "'[i]t is a matter of basic logic that a

misrepresentation cannot cause, much less proximately cause,

injury, unless someone relies upon it.'" <u>Kimmel v. Phelan</u>

<u>Hallinan & Schmieg, PC</u>, --- F. Supp. 2d ----, 2012 WL 645987, at

*15 (E.D. Pa. 2012) (quoting <u>Walter v. Palisades Collection, LLC</u>,

480 F. Supp. 2d 797, 807 (E.D. Pa. 2007) (Robreno, J.)). And

under Pennsylvania law, the offense of theft by extortion is

defined by 18 Pa. Cons. Stat. Ann. § 3923, which states that

> A person is guilty of theft if he intentionally obtains or withholds property of another by threatening to:
>
> (1)  commit another criminal offense;
>
> (2)  accuse anyone of a criminal offense;
>
> (3)  expose any secret tending to subject any person to hatred, contempt or ridicule;
>
> (4)  take or withhold action as an official, or cause an official to take or withhold action;
>
> (5)  bring about or continue a strike, boycott or other collective unofficial action, if the property is not demanded or received for the benefit of the group in whose interest the actor purports to act;
>
> (6)  testify or provide information or withhold testimony or information with respect to the legal claim or defense of another; or
>
> (7)  inflict any other harm which would not benefit the actor.

As we noted above, plaintiffs appear to concede that they have not stated a civil RICO claim based upon a predicate offense of mail fraud -- and to the extent they have made this concession, they have done so wisely since (1) they have failed to allege that they relied on any misrepresentation by defendants, and (2) to the extent their mail fraud allegation would be based on defendants' allegedly baseless contention that defendants are

16

entitled to payment for storage and towing, this claim for fees cannot give rise to liability under § 1964.  See, e.g., Carousel Foods of America, Inc. v. Abrams & Co., Inc., 423 F. Supp. 2d 119, 122 (S.D.N.Y. 2006) (McMahon, J.) ("Even if the lawyers' argument in the breach of contract action lacks merit, the lawyers did not commit a RICO violation by advancing it as a defense in a simple breach of contract suit arising out of Abrams & Company's ordinary business dealings.").  To the extent it rests on defendants' alleged mail fraud, we will thus dismiss Count V.

As for plaintiffs' claim of extortion, it appears to rest on two bases.  First, plaintiffs contend that "[d]efendants' assertion of a lien that does not exist in law, to demand payments that the Plaintiffs do not owe, is . . . punishable as theft and extortion."  Pls.' Resp. at 14.  But a cursory examination of 18 Pa. Cons. Stat. Ann. § 3923 makes clear that asserting the existence of a debt does not constitute extortion, regardless of how groundless a plaintiff may consider this assertion to be.

Second, plaintiffs suggest that defendants have "threatened to destroy or dispose of Plaintiffs' property, representing to Plaintiffs that they will declare it 'abandoned' although the Defendants know in fact that such representations to authorities would be false," and that such conduct is "an ongoing

17

extortion."  Pls.' Resp. at 10.  We need not consider whether such

conduct in fact constitutes extortion -- a characterization that,

to be sure, we find dubious here -- for plaintiffs have only

alleged that defendants lodged this alleged threat once, in a

December 7, 2011 letter in which defendants' lawyer explained that

"[i]n the event your client does not agree [to settle defendants'

bill], please be advised that within the next 15 days, my client

will move to have the tractor, trailers and equipment classified

by the Pennsylvania state [sic] Police as abandoned and we will

proceed to sale for collection of the towing and storage charges."

Ex. D to Pls.' Compl.

      Since plaintiffs have thus failed to allege a "pattern

of racketeering activity," 18 U.S.C. § 1962(c), they have not

stated a claim under § 1964(c) -- and they may not engage in

discovery in the hopes of unearthing additional allegations that

might permit them to state a claim.  Their RICO claim having been

exposed as rhetorical at worst, we will dismiss Count V of the

complaint as well as Count VI, which does nothing more than assert

a claim for injunctive relief that derives from Count V.[5]

_____

     [5] We note, for plaintiffs' edification, that "[t]he
relief a plaintiff seeks, and the claims he asserts, are . . .
conceptually distinct components of a complaint, and there is no
                               (continued...)

### D.   **Plaintiffs' Claims Against Wotring**

Though plaintiffs do not identify against whom they assert each count of their complaint, we presume that all counts are directed against both Atlas and Wotring.  Defendants argue that "[i]t is obvious that the plaintiffs knew that they were dealing with a corporation and, since they knew it to be such, they cannot enforce individual liability upon officers acting for the corporation."  Defs.' Br. at 20.  Plaintiffs respond that

> Wotring, as president of Atlas Towing, Inc.[,]
> controls this illegal enterprise.  Upon
> information and belief, he also controls most,
> if not all, of the persons who engage in it.
> If the evidence indicates that he also
> directly and personally profits from his
> investment, ownership, management and/or
> control of this enterprise, then he is
> answerable for those profits and for the
> damages he continues to inflict.  Moreover, he
> must be subject to the injunctive relief that
> will be essential to the correction of these
> wrongs in the future.

Pls.' Resp. at 15.

As the Supreme Court of Pennsylvania has explained, "[t]he corporate entity or personality will be disregarded only

---

[5] (...continued)
need for a plaintiff to devote a separate count of a complaint to a request for a certain type of relief."  <u>Kauffman v. Pennsylvania Soc. for the Prevention of Cruelty to Animals</u>, 766 F.Supp.2d 555, 560 (E.D. Pa. 2011).

when the entity is used to defeat public convenience, justify wrong, protect fraud or defend crime." Sams v. Redev. Auth. of City of New Kensington, 244 A.2d 779, 781 (Pa. 1968).  The factors to be considered in determining whether to disregard the corporate form include "'undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud.'" Lumax Indus., Inc. v. Aultman, 669 A.2d 893, 895 (Pa. 1995) (quoting Kaites v. Dep't of Envtl. Res., 529 A.2d 1148, 1151 (Pa. Commw. Ct. 1987)).  However, "averments reciting elements of the veil-piercing test, without any supporting facts, constitute legal conclusions.  Even under a notice pleading standard, as interpreted in Twombly, such averments cannot support a veil-piercing claim." Shenango Inc. v. Am. Coal Sales Co., 2007 WL 2310869, at *4 (W.D. Pa. 2007) (McVerry, J.).

        Plaintiffs' complaint is devoid of specific allegations as to Wotring, other than the claim that Wotring "has acted at all times relevant hereto both individually for his own profit and as president and/or owner of Defendant Atlas," Pls.' Compl. ¶ 4, and the allegation that "Wotring is also engaged in the business of motor vehicle service and repair." Id. ¶ 9.  Plaintiffs in their response now suggest that Wotring "controls this illegal

20

enterprise [Atlas]" and "also controls most, if not all, of the persons who engage in it."  Pls.' Resp. at 15.  We cannot consider these post hoc allegations in ruling on defendants' motion to dismiss.  More to the point, since the allegations of plaintiffs' complaint fail to show that any of the circumstances identified in Lumax are present here, we will dismiss plaintiffs' claims against Wotring.  And to the extent plaintiffs offer these new averments as predicates for amending their complaint, they amount to nothing more than conclusory allegations that Wotring and Atlas failed to adhere to corporate formalities.  Because such allegations would not support a claim for personal liability against Wotring under Twombly, Iqbal, and Shenango, we will not grant plaintiffs leave to amend their complaint to include them.

### E.   Counts I and III: Conversion and Replevin

We thus come to the only close question presented in defendants' motion to dismiss: whether plaintiffs may assert claims for conversion and replevin.  In support of their claim for conversion, plaintiffs allege that "Plaintiff has repeatedly and duly demanded that Defendant return the goods, cargo, wares, freight, and/or merchandise to Plaintiff," and that "Defendant has failed and refused -- and still fails and refuses -- to return the

goods, cargo, wares, freight and/or and [sic] merchandise to

Plaintiff."  Pls.' Compl. ¶¶ 40-41.  In support of their replevin

claim, plaintiffs aver that "Plaintiff . . . continues to have a

property interest in the cargo" and therefore "has an immediate

right to possession of the property."  Id. ¶¶ 65-66.

Defendants challenge plaintiffs' conversion claim with

five arguments: (1) "[t]here can be no conversion by the mere

removal of chattel from one place to another with no intention to

exercise further control over it.  There must be appropriation for

one's own use for such tort of conversion," Defs.' Br. at 13; (2)

"this tort requires appropriation and intent to deprive the owner

of the chattel . . . There is no evidence of willful intent;

defendants were called to the scene by the Pennsylvania State

Police and directed to remove the vehicles, clean up the site and

impound the vehicles," id. at 14; (3) defendants' storage of the

vehicle "was done with the consent of plaintiffs," id. (citing Ex.

E to Defs.' Br.); (4) "plaintiffs admit that they are not the

owners of the cargo and they have pled no special ownership. . . .

Clearly, plaintiffs lack the required property interest in the

cargo which forfeits their ability to maintain an action of

conversion," id.; and (5) "plaintiffs [sic] action for conversion

is further barred by defendants' liens against the property and

22

vehicles." <u>Id.</u>  Defendants advance the fourth argument in response to plaintiffs' replevin claim as well.  <u>See id.</u> at 16.

Taking up defendants' first argument, they cite as support for their contention a 1903 case from the Western District of Pennsylvania, <u>McKeesport Sawmill Co v. Pennsylvania Co.</u>, 122 F. 184, 185 (W.D. Pa. 1903).  Even if we (generously) assume that a hundred-year-old case from a federal district court is <u>Erie</u>-predictive authority on the nuances of Pennsylvania common law, <u>McKeesport</u> does not stand for the proposition that a conversion must involve the intention to appropriate a chattel for one's own use.  Rather, Judge Archbald there merely mused, regarding an action for trover, that prior jurisprudence on the subject "seems to show that it is not every destruction or deprivation of property that amounts to a conversion, and that an actual appropriation of it by the offending party for his own benefit is more or less involved in order to make it so.  But this question was not raised at the trial, and I will not undertake to definitely pass upon it."  122 F. at 185.

Sixty-one years later, the Supreme Court of Pennsylvania stated that "'[a] conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without

23

lawful justification,'" <u>Stevenson v. Economy Bank of Ambridge</u>, 197 A.2d 721, 726 (Pa. 1964) (quoting <u>Gottesfeld v. Mechanics & Traders Ins. Co.</u>, 173 A.2d 763, 766 (1961)) -- a conception of the tort that our Court of Appeals has echoed.  <u>See</u>, <u>e.g.</u>, <u>Baram v. Farugia</u>, 606 F.2d 42, 43 (3d Cir. 1979) ("[C]onversion under the common law of Pennsylvania may be conceptualized as follows. Conversion is an act of willful interference with the dominion or control over a chattel, done without lawful justification, by which any person entitled to the chattel is deprived of its use and possession.").  Inasmuch as these more definitive statements of the law announce no requirement that conversion involve the intention to appropriate a chattel for one's own use, we will not impose such a requirement here.

        In defendants' second argument, they suggest that because they removed plaintiffs' vehicle and its cargo at the direction of the Pennsylvania State Police, they cannot have had the intent necessary to support a claim of conversion.  But as the Pennsylvania Supreme Court noted in <u>Stevenson</u>, no less an authority than Professor "Prosser states that . . . '[c]onversion may be committed by: . . . (c) Unreasonably withholding possession from one who has the right to it.'"  197 A.2d at 726 (quoting Prosser, <u>Torts</u> § 15 (2d ed. 1955)).  <u>See also Baram</u>, 606 F.2d at

24

43-44 ("A person not in lawful possession of a chattel may commit conversion by intentionally dispossessing the lawful possessor of the chattel . . . or by refusing to surrender a chattel on demand to a person entitled to lawful possession."). As a result, the mere fact that defendants removed plaintiffs' vehicle and its cargo at the behest of the State Police does not foreclose the possibility that defendants may have committed conversion by refusing to return this property to plaintiffs upon demand.

Defendants' third argument is that they stored plaintiffs' vehicle and its cargo "with the consent of plaintiffs," Defs.' Br. at 14 (citing Ex. E to Defs.' Br.). Defendants point to an August 5, 2011 letter from plaintiffs' counsel as evidence supporting this allegation. Since this letter is neither an "exhibit[] attached to the complaint" nor a "document[] that form[s] the basis of a claim," Brown, 128 Fed. Appx. at 913, we may not consider it in ruling on defendants' motion to dismiss. Defendants' allegation of consent on plaintiffs' behalf is better reserved for presentation in a motion for summary judgment pursuant to Fed. R. Civ. P. 56.

Defendants' fourth argument with respect to Count I contends that "plaintiffs lack the required property interest in the cargo which forfeits their ability to maintain an action of

25

conversion," Defs.' Br. at 14.  As to Count III, they argue that "[a]s plaintiffs have failed to establish any right to maintain the action in replevin, due to a lack of ownership of the cargo and any right to immediate possession of same, they have failed to state a claim against defendants upon which relief can be granted in replevin."  Id. at 16.

As to the conversion, we have already observed that "[a] conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification."  Stevenson, 197 A.2d at 726.  The Supreme Court of Pennsylvania's reference here to "another's . . . use or possession of, a chattel," and the care the Court took to distinguish between "another" and "the owner," make clear that a plaintiff need not own property in order to assert a claim for conversion.  Rather, a plaintiff need only be entitled to use or possession of the property.[6]  Since plaintiffs have alleged that Central signed transportation contracts with its customers regarding the cargo, they have necessarily alleged that Central is

---

[6] Of course, the measure of damages may differ depending on whether a plaintiff alleges interference with an ownership interest or a mere right to use and possession.

26

entitled to possession of this cargo and hence may bring a claim

for conversion arising out of interference with this possession.

As for plaintiffs' replevin claim, it is true that

"'[i]n an action of replevin, the plaintiff must establish either

a general or special property in the goods replevied and his right

to possession, which right must be exclusive to authorize a

delivery of the property to him.'  The burden rests upon the

plaintiff to establish such an interest in the property replevied

as entitles him to exclusive possession."  Blossom Prods. Corp. v.

Nat'l Underwear Co., 191 A. 40, 41 (Pa. 1937) (quoting White Co.

v. Union Transfer Co., 113 A. 432, 432 (Pa. 1921)).

But as the Superior Court of Pennsylvania has

elaborated,

> Exclusive right means a right that excludes
> the defendant; a better right to possess the
> goods than he has.  The fact that a third
> party has a better right to the goods than
> that of the plaintiff does not in itself aid
> the defendant.  In general, a defendant may
> plead such a third party right, but two
> exceptions to that rule govern the instant
> case.  This Court has held that a defendant
> who claims no possessory right in himself may
> not assert a third party's right.  When such a
> third party has consented to the plaintiff's
> replevin action his rights are not available
> to the defendant.

27

<u>Robinson v. Tool-O-Matic, Inc.</u>, 263 A.2d 914, 916 (Pa. Super. 1970) (internal citations omitted).  Given the relationship of privity between Central and its customers, we may infer from the complaint's allegations that those third party customers who have a possessory right in the vehicle's cargo have consented to plaintiffs' replevin action.  In any event, it would seem perverse to allow defendants -- who have <u>no</u> relationship whatsoever to Central's customers[7] -- to assert such customers' possessory rights in order to frustrate Central's efforts to vindicate its own possessory rights and those of its customers.  We therefore conclude that plaintiffs' claim that they have a better right to possess the cargo than defendants, coupled with plaintiffs' privity to the third-party owners of that cargo, entitle them to bring a replevin claim against defendants regarding that property.

We lastly address defendants' final argument, that "defendants have a common law and/or statutory lien to the

---

[7] Thus, the Superior Court noted in <u>Robinson</u> that a defendant may assert a third party's rights as a defense to a claim of conversion only where "the 'third party' right actually constitutes or suggests a right on the defendant's part.  <u>Wilson v. Gray</u>, 8 Watts 25 (1839) ('third party' a partnership between plaintiff and defendant); <u>Johnson v. Groff</u>, 22 Pa. Super. 85 (1903) ('third party' defendant's wife); <u>Swope v. Crawford</u>, 16 Pa. Super. 474 (1901) ('third party' deceased co-defendant and alleged co-seller)." <u>Robinson</u>, 263 A.2d at 916 n.1.

tractor, trailers and cargo, and no action for conversion exists."

Defs.' Br. at 14-15.  In support of this argument, defendants cite

75 Pa. Cons. Stat. Ann. § 3757(a), which provides that

> Notwithstanding any other law or regulation,
> any entity incurring the cost of removing a
> vehicle or cargo at an accident scene if the
> removal is authorized by a police officer
> shall have the unqualified right to
> compensation for the cost of removal and cargo
> storage and cleanup from the owner of:
>
> (1)  A vehicle removed.
>
> (2)  A vehicle, the cargo of which was removed
>      in whole or in part.
>
> (3)  The cargo removed.

In response, plaintiffs oddly repeat that "[t]here is <u>no</u>

provision in common law, or in statute, that renders an owner

liable for the taking and storage of his property by the

Commonwealth as evidence in a criminal prosecution," Pls.' Resp.

at 6 (emphasis in original) -- failing so much as to mention §

3757's existence, let alone explain why it does not apply to this

case.  Plaintiffs also cite <u>State Farm Mut. Auto. Ins. Co. v. Jim</u>

<u>Bowe & Sons, Inc.</u>, 539 A.2d 391 (Pa. Super. 1988), for the

proposition that "[d]efendants in our case have no claim against

the owner for alleged storage or services outside the owner's

control," Pls.' Resp. at 6 -- apparently unmindful that the case

29

they cite was decided seventeen years <u>before</u> § 3757 created an
"unqualified right to compensation for the cost of removal and
cargo storage and cleanup from the owner of . . . "[a] vehicle
removed" from an accident scene, and hence has questionable
continuing force.[8]

> More helpfully, plaintiffs contend that
>
> Defendants' only excuse for refusing to
> release the vehicle and cargo is their claim
> of a possessory lien -- but no such lien
> exists.  The attachment of a possessory lien
> first requires express consent by the owner to
> the merchant's possession.  Secondly, it
> requires a relationship of privity between the
> merchant and the owners. . . . [I]n the
> absence of a possessory lien, the Defendants'
> unlawful retention of Plaintiffs' property --
> unilaterally holding it hostage in order to
> obtain money -- must stop.

Pls.' Resp. at 4-5.

It is true that "[a]t common law, possessory liens are
fundamentally consensual in nature, arising from an agreement,
express or implied, between the owner of goods and the artisan who
renders services for those goods." <u>Pittsburgh Nat'l Bank v.
Schmidt</u>, 41 Pa. D. & C. 3d 143, 144 (Pa. Com. Pl. 1985).  But
plaintiffs fail to distinguish between common law and statutory

---

[8] Although these oddities and failures may at best be
mindless, we remind counsel of their duties to the tribunal under
Pa. R. Prof. Conduct 3.3(a) and Fed. R. Civ. P. 11(b)(2).

possessory liens.  <u>See</u>, <u>e.g.</u> <u>id.</u> at 147 ("[E]ven if the police officer failed to notify Hills in accordance with § 3352(d)(1), we are of the view that such failure does not extinguish the lien imposed by that subsection in favor of the private towing company."); <u>Rager v. Elias</u>, 1989 WL 251370, at *584 (Pa. Com. Pl. 1989) ("In order for a lien to be assertable in a counterclaim in a replevin action, the lien must be one recognized by statute or by the common law or created by agreement; otherwise, it will be rejected.")  Thus, although the absence of consent[9] between plaintiffs and defendants may foreclose the possibility that defendants have a <u>common law</u> possessory lien upon the vehicle and its cargo, § 3757 may nonetheless operate to create a <u>statutory</u> possessory lien.

Based on the allegations of the complaint, § 3757 does operate to create a right of compensation in Atlas -- indeed, plaintiffs themselves aver that Atlas (1) incurred the cost of the removal of the vehicle and cargo from the accident scene, and (2) the State Police authorized the removal, giving Atlas the unqualified right to compensation for the costs associated with

---

[9] To be sure, defendants allege that plaintiffs <u>did</u> consent to defendants' storage of the vehicle and cargo, but we may not consider this allegation in ruling on defendants' motion.

31

the cleanup, towing and storage from the owner of the vehicle and
its cargo.  A long line of cases in Pennsylvania stands for the
proposition that the holder of a lien on a good is entitled to
retain possession of that good until the lien has been satisfied.
See, e.g., Blossom Prods. Corp., 191 A. at 42 (rejecting
appellant's claim to retention of possession of goods because
appellant "did not produce any evidence in support" of "a
statutory or common-law lien on the goods"); Lewis v. Smith, 2 Pa.
D. & C. 3d 183, 187 (Pa. Com. Pl. 1976) ("If defendant has a lien,
he is entitled to retain possession of Reading's truck until his
claim is discharged."); Assocs. Fin. Servs. Co., Inc. v. O'Dell,
417 A.2d 604, 605-06 (Pa. 1980) ("'(I)t is a well-settled
principle of the common law that he who by labor, skill, or
materials adds value to the chattel of another . . . has a
possessory lien thereon for the value of his services and may
retain the chattel in his possession until the same be paid.'")
(quoting Brown on Personal Property 394-95 (3rd ed. 1975))
(ellipses in original).  Because a claim of conversion requires
that the defendant interfere with the use or possession of chattel
without lawful justification, the existence of a lien is thus a
bar to an action for conversion.  See, e.g., Sewall v. Lancaster

32

Bank, 1828 WL 2423, at *3 (Pa. 1828) ("It is long settled, and not disputed, that a lien is a good bar to an action of trover.").

But while the allegations of the complaint demonstrate that defendants have a right to compensation under § 3757, this does not mean that the statute operates to create a possessory lien on the vehicle and cargo -- and, in any event, the parties have not briefed us on this question.  We note, however, that in construing an analogous statute -- 75 Pa. Cons. Stat. Ann. § 3352(d)(1), concerning the removal and storage of abandoned vehicles -- the Fayette County Court of Common Pleas concluded that the statute imposed a lien on the vehicle in favor of the towing company only because "§ 3352(d)(1) clearly contemplates payment of towing and storage costs prior to reclamation of the vehicle," so that "[t]he towing company's lien is created by the requirement of § 3352(d)(1) that the owner reclaim the vehicle in the manner provided by § 7306 of the Motor Vehicle Code, requiring payment of towing and storage costs."  Pittsburgh Nat'l Bank, 41 Pa. D. & C. 3d at 147.  In the absence of a similar requirement under § 3757, we are loath to conclude that this provision creates a statutory possessory lien as opposed to a mere right to compensation -- particularly given that the parties have not briefed us on this point.  We therefore reserve judgment as to

33

this and will deny defendants' motion to dismiss as to Count I of plaintiffs' complaint.

We feel compelled to note, however, that even if we ultimately decide that § 3757 <u>does</u> create a statutory possessory lien in Atlas's favor -- thus barring plaintiffs' claim for conversion -- this does not mean that plaintiffs may not proceed with their claim for replevin.  Fed. R. Civ. P. 64(a) provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment.  But a federal statute governs to the extent it applies," and Rule 64(b) explicitly emphasizes that the remedies available under this Rule include replevin.  Pa. R. Civ. P. 1073 provides that "[a]n action of replevin shall be commenced by filing a complaint with the prothonotary," but Rule 1082 provides that

> (a) A claim secured by a lien on the property may be set forth as a counterclaim. No other counterclaim may be asserted.

> (b) If any party is found to have a lien upon the property the court may enter a conditional verdict in order to enforce the rights of all parties.

The correct course of action here would thus be for plaintiffs to press forward with their claims for conversion and

34

replevin and for defendants to file a counterclaim asserting any entitlement to a lien they feel they may have.  We will accordingly instruct defendants to file an answer to the complaint, along with any counterclaims, forthwith.


BY THE COURT:


__\s\Stewart Dalzell